IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

2013 SEP -9  P 2: 36

| | |
|---|---|
| MASU FAHNBULLEH ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:12-CV-00009-RMG |
| vs. ) | |
| ) | |
| FORCE PROTECTION INDUSTRIES, ) | **ORDER** |
| INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____) | |

This matter is before the Court on the Report and Recommendation ("R & R") of the Magistrate Judge recommending that Defendant's motion for summary judgment be granted and all of Plaintiff's claims be dismissed with prejudice. (Dkt. No. 33.) For the reasons stated below, the Court ADOPTS the Magistrate Judges's R & R with the modifications explained below and GRANTS Defendant's motion for summary judgment (Dkt. No. 22). As explained below, the Court also GRANTS Defendant's motion to substitute the signature pages of certain witness statements. (Dkt. No. 36.)

## I. LEGAL STANDARD

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court must determine de novo any part of the Magistrate Judge's

disposition that has been properly objected to. *Id*; Fed. R. Civ. P. 72(b)(3). The Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

## II. PROCEDURAL BACKGROUND

Plaintiff filed this suit alleging seven claims under 42 U.S.C. § 1981: Discrimination in Promotion, Hostile Work Environment and Harassment, Conspiracy to Terminate Employment, Retaliation by Refusing to Redeploy Overseas, Retaliation by Suspension, Retaliation by Termination, and Discrimination in Failure to Re-hire. (Dkt. No. 1.) Defendant filed for summary judgment on all claims. (Dkt. No. 22.) The Magistrate Judge recommended granting summary judgment as to all claims. (Dkt. No. 33.) Both parties timely objected to portions of the Magistrate Judge's R & R. (Dkt. Nos. 37, 38.)

## III. DISCUSSION

### A. Substitution of Witness Statements

As an initial matter, the Court grants Defendant's motion to substitute the signature pages of certain witness statements. (Dkt. No. 36.) In support of its motion for summary judgment, Defendant filed several signed but unsworn witness statements, which did not include a proper attestation under 28 U.S.C. § 1746. (*See* Dkt. Nos. 22-5, 22-6, 22-7.) While Plaintiff did not object to these statements or their attachments (*see* Dkt. No. 28), the Magistrate Judge correctly noted that such evidence should not be considered on a motion for summary judgment. (Dkt. No. 33 at 6-7 (citing cases).) Defendant states that the proper attestation under 28 U.S.C. § 1746 was inadvertently omitted from these statements and submitted properly sworn or attested statements

that it asks the Court to consider on its motion for summary judgment. (Dkt. No. 36.) The Court will do so.

"[A] district court has discretion to consider a late affidavit if it chooses to do so." *Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993). However, a court should generally only consider such affidavits "if cause or excusable neglect has by shown by the party failing to comply with the time provisions." *Id.* Furthermore, the a district court "may also receive further evidence" after a magistrate judge has submitted her recommendations. 28 U.S.C. § 636(b)(1). Here, the inadvertent deletion of the proper attestation clause is excusable neglect, and the Plaintiff is not prejudiced by the Court's consideration of the witness statements. The witness statements are substantively identical to those timely submitted; the only change is that they are properly sworn or have the proper attestation. Plaintiff not only had opportunity to and did respond to this evidence, he relied on some of it in his response. (Dkt. No. 28 at 2-6, 8.) Thus, the Court GRANTS Defendant's motion to substitute the signature pages of certain witness statements and OVERRULES AS MOOT Plaintiff's objection that the Magistrate Judge erred in considering unsworn statements.

### B. Plaintiff's Affidavit

Defendant asks the Court to strike Plaintiff's affidavit because it is not based on personal knowledge and contains hearsay. (Dkt. No. 31 at 6-7.) Defendant is correct that an affidavit in opposition to a motion for summary judgment must be based on personal knowledge and set out facts that would be admissible were the affiant testifying in court. Fed. R. Civ. P. 56(c)(4); *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, affidavits cannot be based on hearsay. *Evans*, 80 F.3d at 962. However, personal knowledge can be

inferred from the content or context of an affidavit. *Perotti v. Quinones*, 488 Fed. App'x 141, 144 (7th Cir. 2012); *Kemper v. Saline Lectronics*, 348 F. Supp. 2d 897, 899 (N.D. Ohio 2004). Furthermore, the Court need not strike an entire affidavit because a portion of it is inadmissible. *See Chambers v. McLean Trucking Col, Inc.*, 550 F. Supp. 1335, 1338 (1981)("[T]he Court will only consider statements which these affiants have made based on their knowledge . . . It will not strike those affidavits in their entirety . . ."); *accord Jorman v. Veterans Admin.*, 579 F. Supp. 1407, 1412 (D. Ill. 1984).

Here, portions of Plaintiff's affidavit are not based on personal knowledge and/or are inadmissible hearsay. (*See, e.g.*, Pl.'s Aff., Dkt. No. 28-1, at ¶ 8 ("Kenneth Turner told Stacy Parson of Human Resources the presentation would be 5-7 minutes long.").) The Court will not consider such portions of Plaintiff's affidavit but will consider unobjectionable statements contained in Plaintiff's affidavit.

## C. Claims Based on National Origin

The Magistrate Judge correctly stated that Section 1981 provides a cause of action for discrimination based on race and that claims based solely on national origin are not cognizable under Section 1981.[1] *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 883 (D. Md. 2012.) Therefore, to the extent that Plaintiff's claims are based on his national origin, they are dismissed.

---

[1] Neither party has objected to this portion of the Magistrate Judges R & R. (*See* Dkt. Nos. 37, 38.)

**D. Delay in Promotion**

Neither party has objected to the Magistrate Judge's finding that Plaintiff established a *prima facie* case of discriminatory delay in promotion. The Court has reviewed this issue de novo, and the Court agrees with and adopts the Magistrate Judge's analysis and findings on this point. The Court also agrees that Defendant has met its burden to articulate a legitimate, non-discriminatory reason for not initially promoting Plaintiff, namely that Plaintiff had insufficient mechanical skills and that its decision to promote Wilson was "based on his experience as a vehicle mechanic while employed by Force Protection."[2] (Dkt. No. 22-1 at 21-22.) A contemporaneous assessment of Plaintiff after his interview for the position of Staff Instructor II states:

> Mr. Fahnbulleh is a very experienced instructor and trainer. He exhibits the can-do attitude and personality that is needed for this position. He is eager to expand his capabilities to become a better instructor and mechanic on wheeled vehicles. *Mr. Fahnbulleh has no mechanical skills*, but is very eager to learn. I am going to recommend him being hired as an Instructor I.

(Dkt. No. 22-6 at 12 (emphasis added).) The assessment for Wilson, who received the position of Staff Instructor II, states:

---

[2] Plaintiff does not appear to dispute this portion of the R & R but only disputes the Magistrate Judge's conclusion that Plaintiff failed to create an issue of material fact on the issue pretext. (*See* Dkt. No. 38 at 1-2.)

Defendant's primary argument on briefing was that Plaintiff was not qualified at the time of his initial application for Staff Instructor II because he lacked the requisite mechanical skills. (Dkt. No. 22-1 at 21-22.) However, Defendant also argued that it promoted Wilson because of his experience as a vehicle mechanic. (*Id.* at 22.) It is not clear from the R & R whether the Magistrate Judge relied solely on Defendant's assertion that it did not believe Plaintiff was qualified or whether she also relied on Defendant's statement regarding Wilson's relative qualifications as a legitimate, non-discriminatory reason for Defendant's failure to initially promote. (*See* Dkt. No. 33 at 12.) The Court accepts both as facially legitimate, non-discriminatory reasons for not promoting Plaintiff.

> [The candidate] is a very experienced instructor and trainer. He is eager to expand his capabilities to become a better instructor and mechanic on wheeled vehicles. He is very well-spoken. *His background as a mechanic and subject mater [sic] expert would be an asset to our training group.* He exhibits the can-do attitude and personality that is needed for this position.

(*Id.* at 13 (emphasis added).) These assessments are evidence that the hiring official compared the relative qualifications of the two candidates and that the hiring official assessed Mr. Wilson as having better mechanical skills than Plaintiff. "[R]elative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

Thus, the burden has shifted back to Plaintiff to show that Defendant's stated reasons "were not its true reasons, but were a pretext for discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). To survive summary judgment, Plaintiff must point to evidence that "raise[s] a genuine issue of material fact as to the ultimate question, i.e., whether [the defendant] intentionally discriminated against [him]." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 319 (4th Cir. 2005). He has not done so.

The Court deals with each piece evidence that Plaintiff claims creates an issue of fact in turn. First, Plaintiff claims that he was required to present a one-hour power-point presentation as part of the interview process and that no one else was required to do so. (Dkt. No. 38 at 3.) While there is evidence that Plaintiff made such a presentation, there is no evidence that he was the only one required to do so. Plaintiff cites Plaintiff's Deposition Exhibit 10 and Plaintiff's Affidavit ¶¶ 7-9 in support of this fact. (Dkt. No. 28 at 2; Dkt. No. 38 at 3.) Plaintiff's Deposition Exhibit 10 is a series of short emails between Ken Turner (the hiring official) and Stacy Parson in Human Resources. (Dkt. No. 22-3.) Nothing in these emails suggest that

Plaintiff was the only candidate required to make a presentation. Indeed, in response to Parson's question about the subject of the presentation, Turner replied, "Yes it is the same for all...," which might suggest other candidates did in fact have to make such a presentation (*Id.*) Similarly, paragraphs 7-9 of Plaintiff's affidavit shed no light on whether other candidates had to make such a presentation. (Dkt. No. 28-1.) Parties must support their factual positions with citations to the record, and the Court need only consider cited materials. Fed. R. Civ. P. 56(c). The fact that Plaintiff made a one-hour power point presentation as part of the interview process, without more, does not suggest that Defendant's stated reasons are pretextual or false.

Second, Plaintiff claims that he was hired as a Staff Instructor I when no such position had been authorized. (Dkt. No. 38 at 3.) Again, Plaintiff's cited evidence, here Exhibit 1 to the Hearn Statement, does not support the fact asserted. (Dkt. No. 22-5 at 5.) Indeed, it shows that the position was authorized. (*Id.*) However, other evidence in the record shows that at the time Turner *recommended* Plaintiff for Staff Instructor I, no such position was open, and that Plaintiff was later hired for that position after the requisition for Staff Instructors I was approved. (Dkt. No. 22-6 at 17-21.) Regardless, Plaintiff does not explain, and the Court does see, how such a fact could call into question Defendant's stated reasons for not promoting Plaintiff to Staff Instructor II in the first instance. The fact that Defendant promoted Plaintiff to Staff Instructor I, and the evidence cited by Plaintiff, support Defendant's position that while Defendant thought Plaintiff was not currently qualified to be a Staff Instructor II, he was hired as a Staff Instructor I so that he could gain the skills necessary for a Staff Instructor II position. (*See* Dkt. No. 22-5 at 5 ("The position of Instructor I is only temporary, is [sic] provides only the opportunity to qualify to the standards of an Instructor II position.").)

Next, Plaintiff claims that two weeks after he started as a Staff Instructor I, Josh Campbell and Davis Gillespie recommended that he be promoted to Staff Instructor II. (Dkt. No. 38 at 3; Dkt. No. 28 at 25.) Again the cited evidence does not fully support this assertion. The deposition testimony cited by plaintiff states (1) that Ken Turner told Plaintiff that once he had the recommendations of Josh Campbell and David Gillespie, then he could move forward, and (2) that David Gillespie recommended Plaintiff.[3] (Pl.'s Depo. 84:1-86:4.) Campbell's formal recommendation occurred on December 3, 2008, two months after Plaintiff started in the Staff Instructor I position and seven months after Turner recommended that he be placed in a Staff Instructor I position. (*Compare* Dkt. No. 22-6 at 12 *with* Dkt. No. 22-6 at 30.) As the Magistrate Judge explained (Dkt. No. 33 at 14), Campbell's recommendation of Plaintiff in December of 2008 (and Gillespie's informal recommendation of Plaintiff in October of 2008) has no tendency to show what Turner believed about Plaintiff's qualifications in May of 2008.[4] Indeed, Plaintiff received at least six weeks of additional training in the interim. (Dkt. No. 22-3 at 31.) Campbell's assessment indicates that the additional skills acquired by Plaintiff since Turner's assessment contributed to Campbell's recommendation. (*See* Dkt. No. 22-6 at 30 (stating Plaintiff "learned vehicle maintenance in a very timely manner").)

---

[3] For its purposes here, the Court will assume, as Plaintiff asserts, that this recommendation occurred two weeks after Plaintiff started as a Staff Instructor I.

[4] Plaintiff also points out that Josh Campbell, not Ken Turner, recommended Plaintiff for promotion in December of 2008. (Dkt. No. 38 at 3.) Again, this does not help Plaintiff. As Plaintiff admits in his brief, only words and actions of the recommending official is relevant here. (Dkt. No. 28 at 25.) Again, Campbell's beliefs about Plaintiff's qualifications in December do not bear on Turner's beliefs about Plaintiff's qualifications in May.

Next, Plaintiff points to the fact that, as a Staff Instructor I, he (1) taught a class where Staff Instructors II were students and (2) attended MRAP University, a requirement for deploying overseas and apparently something only Staff Instructors II are allowed to do. (Dkt. No. 38 at 3; Dkt. No. 28 at 25.) Again, these facts may tend to show that Defendant believed Plaintiff was qualified to be a Staff Instructor II at the time of their occurrence–in October and November of 2008–but do not show Defendant believed this at the time of Turner's recommendation in May of 2008. The Staff Instructor I position was specifically limited to six months, and Defendant presumed that someone hired as a Staff Instructor I could gain the skills necessary to be a Staff Instructor II within that time. (Dkt. No. 22-5 at 5.) The fact that Defendant may have thought Plaintiff was qualified to be a Staff Instructor II five or six months after being recommended as a Staff Instructor I is not surprising, and it does not bear on whether the Defendant thought he was qualified in May of 2008.

Finally, Plaintiff argues that Defendant's statement on reply that Plaintiff "met the basic qualifications to apply for the Staff Instructor II position" forecloses the possibility that Defendant honestly believed Plaintiff was not initially qualified for the position. (Dkt. No. 38 at 2.) The Court does not agree. It is plausible that Defendant felt Plaintiff met the basic qualifications to apply for the position but that, after an interview, Defendant had reservations about his mechanical skills. However, even if this statement, or any of the other evidence raised by Plaintiff, did raise a genuine issue of fact as to whether Defendant initially believed Plaintiff was qualified for the position of Staff Instructor II, it does not raise a genuine issue of fact as to

whether Defendant believed Plaintiff was *better* qualified than Wilson.[5] "In a failure to promote case, the plaintiff must establish that she was the better candidate for the position sought." *Evans*, 80 F.3d at 960. Plaintiff has failed to raise a genuine issue of material fact as to whether he was more qualified than Wilson and he has failed to put forward evidence from which a reasonable jury could conclude that, as between Plaintiff's race and Defendant's explanation, race was the more likely reason for the delay in his promotion. Thus, Defendant's motion for summary judgment on this claim is GRANTED.

### E. Failure to Re-hire

Neither party has objected to the Magistrate Judge's finding that Plaintiff established a *prima facie* case of discriminatory failure to re-hire in the Spares Account Representative (SPR) position. The Court has reviewed this issue de novo, and the Court agrees with and adopts the Magistrate Judge's analysis and findings on this point. The Court also agrees that Defendant has met its burden to articulate a legitimate, non-discriminatory reason for hiring Connie Gugel over Plaintiff for the SPR position, namely that Ms. Gugel was currently performing the duties of the

---

[5] It is not clear from the record whether, at the time of Plaintiff's initial application, one Staff Instructor II position was open or multiple Staff Instructor II positions were open and Defendant chose to fill only one of them. To the extent that there were multiple open positions, Plaintiff has only made a *prima facie* case only as to the position received by Mr. Wilson. To establish a *prima facie* case, Plaintiff must show that he was "rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Id.* at 959-60. His only showing on this element was that he "was rejected for the position in favor of someone outside the protected class," namely Mr. Wilson. (Dkt. No. 28 at 23-24.)

SPR position as a temporary employee under the supervision of Mr. Payan, the hiring official.[6] (Payan Stmt. ¶¶ 10-12.)

As to pretext, the only evidence cited by Plaintiff is paragraphs 71-73 of his affidavit. (Dkt. No. 38 at 5; Dkt. No. 28 at 18, 27-28.) In these paragraphs, Plaintiff testifies that after a first interview with Mr. Payan, which went well, Mr. Payan advised him that there would be a second interview where Plaintiff would present a Power Point presentation. (Pl.'s Aff. ¶ 71.) Plaintiff informed Stacy Parson in Human Resources of this, and she stated that the job description did not include a Power Point presentation as part of the interview process and that she would contact Payan and get back to Plaintiff. (*Id.*) The next week Plaintiff followed up with Payan on a topic for the presentation, and Payan said, "I will get back to you." (*Id.* at 72.) Two days later Plaintiff contacted Payan again and learned that he was not selected for the position. (*Id.*) Plaintiff informed Parson that he was not selected and told her he was surprised. (*Id.* at 73.)

This evidence has no tendency to show that Defendant's stated reason for hiring Gugel over Plaintiff was a pretext for intentional discrimination based on race. As the Magistrate Judge points out (Dkt. No. 33 at 16), Plaintiff has not presented any evidence on whether other candidates were told they had to make Power Point presentations or did, in fact, make such presentations. At best, this evidence makes it more likely that Plaintiff was not chosen because he informed Human Resources that Payan was requiring a Power Point presentation when that requirement was not listed in the job description. But such a report by Plaintiff is not protected

---

[6] Plaintiff's only objection to this finding by the Magistrate Judge was that Payan's statement was not sworn. As explained above, Defendant has submitted and the Court has agreed to consider a sworn version of this statement, and Plaintiff's objection is moot.

activity, and it does not raise a genuine issue of material fact as to whether he was the victim on intentional discrimination based on race. Thus, Defendant's motion for summary judgment on this claim is GRANTED.

### F. Retaliation Claims

Plaintiff failed to brief or make any arguments in support of his retaliations claims in his response brief. (*See* Dkt. No. 28.) Nonetheless, the Magistrate Judge considered Plaintiff's retaliation claims as raised in the Complaint and the record before her to determine if any of these claims could survive summary judgment. (Dkt. No 33 at 16-24.) Neither party objects to the portions of the R & R regarding Plaintiff's Retaliation by Suspension and Retaliation by Termination claims. (*See* Dkt. Nos. 37, 38.) After a de novo review, the Court agrees with and adopts the Magistrate Judge's analysis and findings on these points.

With regard to Plaintiff's claim of Retaliation by Refusing to Redeploy Overseas, the Defendant objects to the Magistrate Judge's characterization that Plaintiff's overseas transfers were "largely unexplained." (Dkt. No. 37 at 6.) As to the first transfer to Taji, the Defendant points to Plaintiff's testimony that in a meeting with all of the instructors, Paterniti asked for volunteers to go to Taji and that Plaintiff volunteered for this transfer. (*Id.*; Pl.'s Depo. 139:17-24.) With regard to the second transfer to Camp Liberty, Defendant essentially concedes that the reason given to Plaintiff (the need for an additional instructor) was a pretext, but not for racial discrimination. It was a pretext "to move him home quickly" after sexual harassment allegations were made against him. (Dkt. No. 37 at 5-6.) Plaintiff conceded that he was moved from Taji to Camp Liberty for this reason. (Dkt. No. 28 at 23.) For the purposes of any discriminatory claim, the Court finds that Defendant has put forward legitimate, non-discriminatory reasons for these

transfers, namely that Plaintiff volunteered for the first and that Defendant wanted to get Plaintiff out-of-country quickly due to the sexual harassment allegations against him.

Plaintiff objects to the Magistrate Judge's recommendation that summary judgment be entered on his Retaliation for Failure to Redeploy claim. (Dkt. No 38 at 6-8.) But the undisputed evidence is that the Department of Defense would not allow Plaintiff to redeploy because of its own investigation of the sexual harassment allegations against Plaintiff. (Dkt. No. 22-3 at 58; Dkt. No. 22-6 at 64-56.) As Plaintiff has put forward no evidence regarding the veracity of this legitimate, non-discriminatory reason for failing to redeploy Plaintiff, summary judgment is appropriate.[7] *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188-89 (4th Cir. 2004). Plaintiff claims that because the sexual harassment allegations against him are unfounded, this non-discriminatory reason must be unfounded. (Dkt. No. 38 at 7.) However, one does not follow from the other. Even if the allegations against Plaintiff were unfounded, the Department of Defense's insistence that Defendant not redeploy Plaintiff pending its investigation is a legitimate, non-discriminatory reason for not redeploying Plaintiff.

Finally, Plaintiff states that "Josh Campbell was the common player" presumably connecting the protected activity with the adverse event. First, Plaintiff's evidence that Josh Campbell was involved in the decision for him to return to South Carolina is hearsay and inadmissible. (*See* Pl.'s Aff. ¶ 48.) Second, assuming for the sake of argument, that Campbell was involved in the decision not to redeploy Plaintiff, this does nothing to negate Defendant's

---

[7] The Court believes that the analysis of Plaintiff's retaliation claim stops here and thus declines to adopt the Magistrate Judge's R & R on this claim after the fourth line of page 23.

substantiated claim that it chose not to redeploy him because the Department of Defense would not allow it.

Finally, Plaintiff testifies that he was authorized to work in Iraq, Afghanistan and Kuwait in February of 2010 after being employed by another government contractor. (Pl.'s Aff. at 84; Dkt. No 38 at 7.) However, the fact that the Department of Defense allowed Plaintiff to deploy in February of 2010 does nothing to refute the evidence that it would not allow Plaintiff to deploy in April-September of 2009. The most logical inference is that the Department of Defense completed its investigation in the interim.

Plaintiff has failed to raise a dispute as to material fact regarding his retaliation claims. Thus, Defendant's motion for summary judgment on these claims is GRANTED.

### G. Conspiracy to Terminate

First, a claim of conspiracy to violate Section 1981 is not a cognizable claim under Section 1981 as Plaintiff has pled. If it is a cognizable claim, it is one under Section 1985(3). *See Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 n.7 (11 Cir. 2010)(listing cases holding such claims are cognizable under Section 1985(3) and cases holding that they are not). More fundamentally, Plaintiff has failed to put forward any evidence of a conspiracy. Neither party has objected to the Magistrate Judge's recommendation of granting Defendant's motion for summary judgment on the conspiracy claim. The Court agrees with and adopts the Magistrate Judge's analysis and findings on this claim.

### H. Hostile Work Environment

Plaintiff lists twelve facts that he claims raise a genuine issue as to whether he was subject to a hostile work environment. (Dkt. No. 38 at 8-9.) First, as explained above, Plaintiff

has failed to put forward any evidence of his claim that other candidates for the Staff Instructor II position were required to provide shorter Power Point presentations than Plaintiff. He cannot relay on this "fact" with no evidentiary support.

Second, for most of the actions listed by Plaintiff, he has failed to put forward any evidence that such actions were based on race. As the Magistrate Judge correctly pointed out, courts have repeatedly held that a litany of workplace grievances, with no evidence that they were based on race, do not support a hostile work environment claim. (Dkt. No. 33 at 26 (citing cases).) To survive summary judgment, Plaintiff must put forward evidence such that a reasonable jury could find that the harassment described was based on Plaintiff's race. *E.E.O.C. v. Central Wholesalers, Inc.*, 573 F.3d 157, 175 (4th Cir. 2009). Plaintiff has not put forward such evidence for the following actions:

- The accusation that Plaintiff made sexually harassing statements[8];
- Treatment of Plaintiff while he was under suspicion for sexual harassment;
- Requirement that Plaintiff present a one-hour Power Point presentation[9];
- Recommending Plaintiff for a Staff Instructor I position before it was authorized;
- Having Plaintiff, as a Staff Instructor I, teach a class where Staff Instructors II were students.

---

[8] The Court also notes that it was a Department of Defense employee, not Defendant's employee, that made these allegations. Therefore, any claim based on this accusation is not a claim against Defendant.

[9] The Court also notes that while Plaintiff has put forward evidence that a Power Point presentation was required and that he in fact gave a one-hour presentation, there is no evidence in the record that his presentation was *required* to be an hour long, which seems to be Plaintiff's concern.

- Deploying him to Iraq four months after his promotion to Staff Instructor II (instead of earlier);
- Transferring Plaintiff twice while he was in Iraq[10];
- Having co-workers escort him to the departure plane after he was accused of sexual harassment;
- Being placed on administrative leave after returning from Iraq[11];
- Plaintiff's treatment after returning from Iraq;
- Transferring Plaintiff to Roxboro, North Carolina;
- Being taken off the training schedule by Matt Garcia[12];
- Being suspended after he complained about two other instructors disrupting his class;
- Being told to give a Power Point presentation as part of the interview for the SAR position.

The only evidence offered by Plaintiff that these actions were based on race is that they occurred after he complained about the Wilson comment and after Defendant instituted diversity training. (Dkt. No. 38 at 9.)   First, this statement is not entirely true.  Several of the above-listed actions happened before the Wilson comment and before Plaintiff complained about the Wilson

---

[10] As explained above, Plaintiff admits that he volunteered for the first transfer and that the second transfer was to get him out-of-the-country after the sexual harassment allegation.

[11] Plaintiff admits that this action was "based on false allegations of sexual harassment and assault on a co-worker" and not race. (Dkt. No. 38 at 9.)

[12] The undisputed evidence shows that Plaintiff was taken off the training schedule and later suspended due to alleged "unprofessional" confrontations with other instructors, "problems he has with his temper," and complaints made by fourteen other instructors. (Dkt. No. 22-3 at 65-68.)

-16-

comment. Second, as explained above, Plaintiff outright admits that many of these actions were based on the sexual harassment allegations against him and, therefore, not on race. Third, the undisputed evidence shows that at least some of the actors did not know about the Wilson comment or Plaintiff's reporting of it (*see* Payan Stmt. ¶ 17), and Plaintiff has not put forward evidence that other actors did. The record shows that Stacey Parson, Josh Campbell and fellow instructors "Larry, Shawn, Daune Shorter, Edward Wilson and Arthur Jefferson" were aware of the Wilson comment and/or Plaintiff's report of it. (Dkt. No. 22-6 at 31.) As far as the Court can tell, none of these individuals were responsible for the actions of which Plaintiff complains. (*See* Dkt. No. 28 at 9-17.) In short, the Plaintiff has failed to create a genuine issue of fact as to whether any of the actions that he complains of were based on race.

As the Magistrate Judge correctly concluded, only one incident could be found to be based on race–Wilson's "foreigner" comment. The Court has reviewed de novo whether a reasonable jury could find that this one comment alone is "sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive atmosphere." *Central*, 573 F.3d at 175. For the reasons stated in the R & R, the Court concludes that a reasonable jury could not do so. Therefore, the Court ADOPTS the Magistrate Judge's R & R on this claim and GRANTS Defendant's motion for summary judgment on this claim.

## IV. CONCLUSION

The Court GRANTS Defendant's motion to substitute the signature pages of certain witness statements. (Dkt. No. 36.) The Court ADOPTS the Magistrate Judges's R & R with modifications as explained above. Based on the reasons set for in the Magistrate Judge's R & R

as well as the reasons set for above, the Court GRANTS Defendant's motion for summary judgment on all claims (Dkt. No. 22).

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Judge

Charleston, South Carolina
September 9, 2013